We have two cases to be submitted today on oral argument, beginning with United States v. Clark. Ms. Rosenblatt. May it please the Court, my name is Alexandra Rosenblatt, and I represent the appellant, Ernest Clark. This Court should vacate Mr. Clark's conviction and remand for further proceedings. Our brief advances several reasons for the Court to take that action, and I plan to focus on three here and welcome the Court's questions about others. First, the government has not met its burden to prove that Mr. Clark's Louisiana conviction for aggravated assault with a firearm justifies his permanent disarmament. Second, the government cannot rely on Mr. Clark's probationary status because it forfeited that theory, and considering it for the first time on appeal would render Mr. Clark's guilty plea involuntary and unintelligent. Third, given the inadequate factual and legal record in this case, the Court should adopt the modest and uncontroversial practice of vacating the judgment and remanding for further proceedings. I'll start with Mr. Clark's prior conviction. The government did not develop the facts or circumstances of Mr. Clark's Louisiana conviction for aggravated assault with a firearm. Because of that failure, this Court can consider only the elements of that crime, and in Garner v. United States, this Court held that the Louisiana crime of aggravated assault with a firearm can be committed by negligent conduct. The government bears the burden to prove that the nation has a history and tradition of punishing negligent conduct with permanent disarmament. The government attempts to do so by identifying an alleged history and tradition permitting Congress to disarm dangerous people. But as this Court explained in Connolly, not one piece of historical evidence suggested that the Founders authorized Congress to disarm anyone it deemed dangerous. Instead, the Founders disarmed people who posed a specific type of danger. And to justify a modern firearm regulation, the government must identify colonial laws that disarmed people for a reason comparable to the reason the Founders used. The government cannot do so here. The government has identified colonial laws that disarmed people who were thought to pose a risk of intentional violence. Take, for example, colonial era laws that disarmed loyalists to the Crown. These laws regulated firearms to prevent a potential insurrection or rebellion. Similarly, the common law crimes of affray and going armed punished fighting in public or the use of weapons to terrify others. In Bruin, the Supreme Court cited a notable example of Sir John Knight, who went into a church with a gun to terrify the king's subjects. The Court explained that conduct fell within going armed laws only when the defendant acted with evil intent or malice. The historical record shows that these colonial laws shared a common purpose. They permitted the disarmament of those who committed intentional violence. That purpose does not compare to Section 922G1 as applied to an individual who committed negligent conduct. Isn't there also evidence that public safety has been factored into those laws as well? Yes, but I think that the type of public safety is important. It can't just be any public safety because that might apply, for example, in Connolly to a habitual user of marijuana. Instead, we're looking at the purpose of the disarmament, and that purpose was to disarm someone who posed a risk of intentional violence. So the underlying offense here was aggravated assault with a firearm? Yes, Your Honor. And your contention is that that was not violent? Yes. Well, my contention is that the government has not proved that that involved any intentional violence, and that is the government's burden, and that based on the elements of that crime, our Fifth Circuit case law shows that the crime can be committed with negligent conduct, and that's United States v. Garner. All right, but again, more precisely, you're perfectly entitled to say that the government hasn't established it. What is your position as to whether this was violent? There's no evidence in the record that this was a violent crime. All right, so I'll ask the third time. You're saying it's not violent? I'm saying that the government bears the burden. I don't have any knowledge of the facts and circumstances of that crime from the record, and neither did the trier of fact here, which was the district court, and the government bears the burden of proof to show that that crime was committed by intentional conduct. So turning now to the government's theory about probation, for the first time on appeal, the government advances the theory that Section 922G1 is constitutional as applied to Mr. Clark because he was on probation at the time of the offense, but appellate courts do not affirm convictions based on theories that weren't presented to the district court. But you did concede that the government argued in response to the motion to dismiss that Clark was on post-release supervision at the time of his offense, correct? The government stated that in its statement of facts in response to the motion to dismiss, but it offered no historical colonial analogs showing that at the time of the founding, colonial legislators disarmed people still serving a criminal justice sentence, and that element also wasn't explained to Mr. Clark as part of his guilty plea. In other words, no one, Mr. Clark had no reason to know and was not informed that the government would have to prove that he was on probation at the time of the offense in order to bring a charge against him. The government forfeited the probation theory by not pressing it below. In Bullock, this court held that the government can provide additional legal support for its argument that Section 920TG1 is constitutional under the Second Amendment, but Bullock is distinguishable for two reasons. One, Bullock was decided on a motion to dismiss. So the government hadn't staked out its theory of liability. It was simply asking for the opportunity to get to a jury. Here, the government has staked out its theory about how Mr. Clark committed a constitutional 922G1 offense. That theory did not include any element that the government had to prove that Mr. Clark was on probation at the time that he possessed the firearm. The second reason Bullock is distinguishable is that in Bullock, the government was relying on the same fact on appeal that it relied on below. So the government was relying on the fact that Mr. Bullock had, for example, a manslaughter and a Mississippi aggravated assault with a firearm conviction. Its legal support changed. It offered additional colonial analogs on appeal, but the fact that was relevant and that Mr. Bullock would have understood was relevant was his prior conviction, and that fact didn't shift from the district court to appeal. Here, on the other hand, the government is adding facts, or at least adding them in a different light, which is that they have to prove that he was on probation at the time of the offense. To allow the government to make this kind of switch on appeal would essentially be the same as allowing the government to choose one theory of liability below. So if a statute has multiple ways of satisfying a charge, the government could choose one below that it thinks the defendant is willing to admit, and then when that theory is pressed or becomes difficult to defend on appeal, the government could switch to another way of satisfying the statute and simply pull facts from the PSR to support the factual basis. This court should not allow that. This court's forfeiture laws do not allow that. In addition to the concept of forfeiture, the court should reject the government's attempt to rely on probation because doing so would raise serious questions about whether Mr. Clark's guilty plea was intelligent and voluntary. The record shows that Mr. Clark was not informed of an essential element of this crime, which was that the government has to show that Mr. Clark was on probation at the time of his offense. And this court's precedent in Daniels, I think, proves this. In Daniels, the court held that based on the analogs the government provided in that case, in order to prove a constitutional conviction for 922G3, the government had to prove that Mr. Daniels was presently intoxicated. The court looked at what the jury was instructed in that case and said the jury wasn't instructed on this element. So it vacated that conviction, and the court remanded for retrial with the government having to prove that element. A knowing and voluntary guilty plea requires the defendant to waive his right to self-incrimination and waive his right to insist that the government prove every element of the crime beyond a reasonable doubt. If this is an element of the crime, that Mr. Clark was on probation at the time of the offense, he could not have waived his right to insist that the government prove that element unless he knew that that was an element of the offense. The Rule 11 colloquy doesn't show that the court informed him that that was an element. He couldn't have known by any other way. The government didn't argue it in response to the motion to dismiss. It wasn't in the indictment. This is not an element that we would have expected defense counsel to brief with the defendant because this court's case law on that point didn't come out until way past the guilty plea. So this court should not allow the government to change its theories on appeal because it would render his guilty plea involuntary. Finally, we ask that the court remand this case under Utah v. Sue. The factual and legal record in this case are significantly underdeveloped. The record lacks information about the facts and circumstances of Mr. Clark's prior conviction, to your point, Judge Smith. It lacks legal arguments about the relevant historical analogs and their application to Mr. Clark. Further development of the legal and factual record may obviate the need for this court to answer any of these difficult questions. For example, if the government is able to develop the facts and circumstances of Mr. Clark's prior conviction, if the government is able to show that it was intentional violence or violent conduct, this court may not need to decide whether negligence can support permanent disarmament. Are you suggesting that we remand without vacating the sentence or that it must be vacated first? We ask that the conviction and sentence be vacated. And the reason for that is that— Again, sometimes we do a limited remand just to find additional facts. I'm not suggesting whether that would be appropriate here. But there's a big difference between just a temporary remand and vacating the conviction and sentence. You neglected to tell us that that would be part of your request. Yes, Your Honor. We would request that the court vacate the conviction and sentence. And the reason for that is when the government provides additional facts and circumstances to support what happened with that aggravated assault with a firearm offense, Mr. Clark needs an opportunity to decide whether he wants to admit those facts and circumstances or he wants to insist that the government prove those to a jury. And he can't waive the right to do that unless he knows what those facts and circumstances are. So allowing the government on remand to develop that record on a limited remand would raise the same questions about the voluntariness and intelligence of his guilty plea. And so that's why we would ask the court vacate the conviction and sentence with the remand. Likewise, on the probation, if the government is able to prove that Mr. Clark was on probation at the time of his offense and Mr. Clark determines that he would like to waive his right to contest that fact or to insist that the jury prove that fact, that the government prove that fact to the jury, then this court would not be in a position of deciding whether if the government switches theories on appeal it renders the underlying guilty plea involuntary. So the court can avoid these difficult constitutional questions with a remand given that the state of the law today is vastly different than on the date that the district court accepted Mr. Clark's guilty plea, we argue that that's the proper result in this case. All right. Thank you, Ms. Rosenblatt. You've saved time for rebuttal. Ms. Case. May it please the court. Jennifer Case here for the government this morning. There is no factual dispute that needs further development. In the precedence investigation report, this is record citation 178, paragraph 36 of the PSR, which was uncontested by either party and accepted by the court at sentencing, it says that Clark committed battery with a dangerous weapon upon his victim when the offender, Mr. Clark, intentionally inflicted serious bodily injury. So there is no factual dispute here as to the fact that the battery with the gun was intentionally inflicting serious bodily injury or the assault with the gun, although the PSR says battery. Can you pick up where your friend on the other side left off? And that is she was being remanded simply because there was a change in the law between the time the case was decided and now at the time of this appeal. No, Your Honor, and this court has not done that in any of these post-Bruin cases from Diaz to Contreras to Giglio to Jones to Grimes. Grimes actually did summary affirmance when the defendant was on probation at the time of his possession of the gun. This court didn't do that in Schnur, where the defendant had been convicted of aggravated battery. It didn't do that recently in Kimball. That's just not the practice that this court has engaged in, nor should it. This court can affirm on any ground whatsoever. The government's position has been consistent since the motion to dismiss was filed in that we believe that G-1 is constitutional in all respects and not susceptible to as-applied challenges. After that was briefed and decided by the district court, which was bound by Fifth Circuit precedent at the time that G-1 was constitutional, this court decided Diaz, and so we understand that that argument is foreclosed. That's still our top-line position. We also accepted at the time that the motion to dismiss here was filed that the government had the burden to show that G-1 was facially constitutional, and we presented arguments to the district court as to that point, and this court decided that in Diaz, G-1 is facially constitutional. The court left open that there may be some circumstance where as-applied, G-1 is not constitutional. So far, that door, if unlocked, has not been pushed open by any opinion of this court. Would it be your position that when making a determination, you look at the particular conduct of the defendant or the conviction itself? Well... The statute under which the person had been convicted. The government's position is you shouldn't have to look at any of it, just that G-1 is constitutional, but falling from that to the next order of argument would be it's not just the one predicate conviction. If defendant is arguing as-applied to me, a person in America, G-1 is unconstitutional, it's the whole as-applied situation. It's not just as-applied to one specific predicate felony. It's as-applied to the conditions, the choices, the actions of that person. Is that person someone who G-1 should not apply to? And that's very fact-specific. We also noted in footnote 2 of our brief that although the government agrees that Bruin put the facial challenge burden on the government to show that G-1 facially is constitutional, that as-applied, it should be the defendant's burden to show as-applied to me, G-1 is unconstitutional under the Second Amendment. That has not been fleshed out by any court as far as I am aware as I stand here this morning, but that is the normal course for as-applied challenges in other constitutional contexts, and we note a couple examples in footnote 2 of our brief to this court. I would say that this appeal was brought from a denial of a motion to dismiss, and that motion to dismiss stated that felons as a category could not be disarmed consistent with Bruin. That was the argument presented in the brief. And so the government's response to the district court was with respect to that. At the time that the government briefed its response in the district court, Daniel's case had not been vacated by the Supreme Court, but it subsequently was. The Rahimi case had not been remanded from the Supreme Court, but it subsequently was. And following that kicked off the Diaz and subsequent cases. And so when we're presenting legal arguments to this court at this time, we are presenting arguments in the light of the current case law of this circuit. And so I don't want to leave the impression that there was any gamesmanship in selecting arguments that were made below. Those arguments were made over a year ago, I believe, in a very different legal landscape than we have here today. But what we now know, and what the district court knew then, and what Mr. Clark knew then, was that he was on probation when he was at a high school football game as a grown man and got into a fight which the school resource officer tried to break up. And when the officer tried to do that, Mr. Clark tried to grab a gun. And then when the resource officer sort of scuffled with Mr. Clark to stop that, Mr. Clark ran away. Mr. Clark was on probation at that time. Mr. Clark was also on probation a month earlier when he had a gun in a car following an altercation, a use of a gun related to an employee at Walmart. Those facts... Mr. Rosenblatt seems to contest whether he was on probation or to claim that that's not established and that that's something that would have to be established at the district court level. Is that something that we can take judicial notice of, or is it well enough established in this record? Or is Ms. Rosenblatt correct that that was just a fact that was overlooked? Ms. Rosenblatt agrees in her filing, and I believe here this morning, that Mr. Clark was on probation. I think her concern is that the government did not present his probationary status when it read the factual basis at the change of plea. That's not what I heard her say, but I may be mistaken. Supposing I have misunderstood, which may very well be the case, probationary status is not an element of the offense, as my learned friend was speaking this morning. That is not something the government is required to prove. It is not something the government presented at the factual basis of the guilty plea here because it is not an element of the offense. It is, however, relevant to Mr. Clark's as-applied challenge, where he is trying to say, although this court has said that G1 is facially constitutional and that categories of persons can be disarmed, including those who commit aggravated assault with a gun, that as applied to him, he did not know that his probationary status was relevant to that inquiry. But that is not the same as a fact fire. The jury would never have been told about his probationary status unless somehow 404B evidence came in or something along those lines. But that would not have been an element that the prosecution would have proved had this case gone to trial. But here we have an appeal from a motion to dismiss. So that's before there was any trial. That's before the factual basis was read. Mr. Clark's argument was felons could not be disarmed following the Bruin decision and that the government had the burden to show otherwise. And we did that in the Diaz case. So Ms. Rosenblatt tells us that the government made what she calls a switch on appeal and that that calls into question the legitimacy of the guilty plea because at the time of the plea, the government's theory had not been announced. The government's theory at the time of the guilty plea, which Mr. Clark accepted knowingly and voluntarily after the government read the factual basis, was that Mr. Clark was at that football game, that there was a fight that he was involved in, a school resource officer tried to break it up when he did so. Mr. Clark went to get his gun and that Mr. Clark fled the scene and later admitted that that gun that the resource officer had withheld from Mr. Clark was his. Those were the facts that Mr. Clark accepted. That is what supports his conviction under G-1. Probationary status does not inform whether he knew he had that gun after he had been convicted of his felony offense, which was aggravated assault with a gun. My learned friend, Ms. Rosenblatt, did acknowledge that in the Bullock opinion that this court published earlier this year, the Second Amendment analysis is a legal inquiry and that this court can hear any additional legal support on appeal. She says Bullock is distinguishable. She says that because the probationary status was a fact, but that fact was something that both sides accepted in the district court level. It's in the precedence investigation report. It was in the government's uncontested response to the motion to dismiss. The fact is not contested that he was on probationary status, and the government is not introducing that fact newly for the first time. Mr. Clark is not surprised that the government believes he was on probation. In fact, Mr. Clark, when presented with the precedence investigation report, which says he was on probation at the time of these actions, he did not contest that before the district court. And he would have done so, even it would have been prudent to do so, even in the absence of this G-1 inquiry, because that is a fact that the district court would have weighed under the 3553A factors. So there is an incentive to correct such statements before the district court. Mr. Clark's other – all of Mr. Clark's constitutional challenge, his spatial challenge to Section 922G1, his as-applied challenge to 922G1, his equal protection argument under the Fifth Amendment, and his Commerce Clause challenge have been foreclosed by published opinions of this court. They were not all foreclosed at the time of briefing, but through the Rule 28J letters, the arguments that were not foreclosed at that time, the parties had acknowledged that evolution of case law. The equal protection challenge was waived by the appeal waiver. That's right. There are appeal waivers that also apply, Your Honor, and that applies also to the guideline argument. That argument is just squarely foreclosed by the appeal waiver that says he has waived his right to appeal the sentence on any ground whatsoever. I believe I have addressed the arguments from my learned friend. If there are other questions from the court, I'd be happy to answer them. All right. Thank you, Ms. Case. Ms. Rosenblatt. Thank you, Your Honor. Ms. Bowman. Your Honor, I'd like to begin where Ms. Case began, which is reading from the PSR about aggravated assault with a firearm. And she read the part, the quotes from the indictment on aggravated battery. With regard to aggravated assault with a firearm, which is the charge that Mr. Clark was convicted of, it simply said he did commit aggravated assault upon the alleged victim. So there is no intentional language in there. Even if there were the language intentional, we know from United States v. Garner that intentional does not mean, in Louisiana state law, what we think of intentional as meaning. It is not specific intent, and it could include negligence. So there are no facts and circumstances in this record that would support the conclusion that aggravated assault with a firearm involves any intentional conduct. Ms. Case argued that the defendant bears the burden for an as-applied challenge under Bruin. That proposition is squarely rejected by Bruin itself and also in this court's precedent in Diaz, Schnur, and Kimball. All as-applied challenges. The burden was still placed squarely on the government to prove that the statute is constitutional as applied to a defendant with a certain criminal history. Fortunately, as you know, you have two members of the Diaz panel here. Yes, Your Honor. Take a close look at that. Fortunate for me. I also want to emphasize that it's not just the fact that he was on probation. We have an argument that there's not an adequate factual basis for that fact. That's in our briefs. But the importance is what that fact was doing. Did the government need to prove that fact in order to prove its constitutional claim? And I would point this court to McCarthy v. United States, a Supreme Court case, 394 U.S. 459, that says because a guilty plea is an admission of all elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the fact. But I think opposing counsel's argument was that even if this had gone to trial and before a jury, they would not have been presented with the fact that he was on probation. So it has nothing to do with the facts that he pled guilty to. I think that's wrong. There is nothing in our constitutional system other than the fact of a previous conviction that holds that if a fact is necessary for the government to prove, and here they have to prove that the charge is constitutional as applied to Mr. Clark, there's nothing that would relieve them of that obligation. Now, a defendant in a case could say, I don't want the jury to know I'm on probation, so under old chief, I'm going to stipulate to that. That could happen. But the defendant has the right for that fact because it's necessary for the government to prove the constitutionality of its charge. And because it's a fact, the government has to prove that to a jury, and the defendant would have the right to insist that the government do so to the jury beyond a reasonable doubt. In order for the defendant to waive that right, he has to know that for the government to win, for the government to convict me, it has to prove that probation, that I was on probation at the time that I possessed this firearm. And Mr. Clark did not know that. There's no indication in this record that he would have known that or even that the government knew that. And the district court didn't know it either because the district court assumed that the dicta in Heller that the law was presumptively constitutional was all that was needed. So the district court didn't know the government had any sort of element to prove this. The easy way out here is to vacate the conviction and remand. That way we can, it's not only the easy way out, it's the constitutional, constitutionally valid way to ensure that Mr. Clark understands exactly what he's either admitting to or waiving his right to insist that the government prove beyond a reasonable doubt. It ensures that the district, that everybody is on the same page and that any conviction is constitutionally sound. Thank you. Thank you, Ms. Rosenblatt. Your case is under submission. Remaining case for today, Yarbrough v.